**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0863-24

KEMAL BECIRAGIC and
ALICJA M. KOCHANSKA
BECIRAGIC,

      Plaintiffs-Appellants,

v.

BLUE BLADE STEEL CORP.[1]
and J.H. SHAW REALTY,

      Defendants-Respondents,

and

FENTON CONSTRUCTION
CO., INC. and UNITED SAFETY
LLC,

      Defendants.

_____

Argued May 7, 2026 – Decided August 6, 2026

Before Judges Marczyk and Puglisi.

_____

[1] Improperly pled as Blue Blade Corp.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0431-22.

Timothy J. Foley argued the cause for appellants (McHugh & Imbornone, PA, and Foley & Foley, attorneys; Salvatore Imbornone, Jr., Bryan R. Gavin, Timothy J. Foley, and Sherry L. Foley, of counsel and on the briefs).

Peter J. Dahl argued the cause for respondents (Law Office of James H. Rohlfing, attorneys; Peter J. Dahl, on the brief).

PER CURIAM

Plaintiffs Kemal Beciragic[2] and Alicja M. Kochanska Beciragic appeal from an October 7, 2024 order granting summary judgment to defendants Blue Blade Steel Corp. (Blue Blade) and J.H. Shaw Realty (Shaw) (collectively, defendants), dismissing their complaint seeking damages for injuries sustained when plaintiff fell from a roof.  We affirm.

Shaw owns a commercial building in Kenilworth, which is leased and occupied by Blue Blade, a steel manufacturer.  In October 2020, a fire damaged the building's roof.  Blue Blade hired defendant Fenton Construction Co., Inc. (Fenton), a roofing contractor, to repair the roof and support structures, but the insurance investigation revealed the roof contained asbestos.  Blue Blade then

---

[2]  Because the facts in this opinion only concern Kemal Beciragic, we refer to him individually as plaintiff.

hired United Safety LLC (United Safety) to perform asbestos remediation on the roof. Plaintiff was employed by United Safety as a laborer.

Fenton and United Safety regularly coordinated with each other during the project, as the latter's asbestos removal impacted the former's repair of the roof. The damage to the roof and structure was extensive, so Blue Blade retained other contractors to assist with various aspects of the restoration. While the repairs were taking place, Blue Blade continued its business operations in the building.

Fenton's responsibilities included constructing a new metal roof system and installing new wall panels. It hired a subcontractor to remove damaged steel and install new structural steel and roof members. It also engaged an engineer to review the structure and a supplier for the new roof system.

The building had multiple roofs of varying heights, and the contractors did not construct scaffolding because it would have interfered with Blue Blade's operations on the floor below. Fenton's President and Chief Executive Officer (CEO) suggested constructing a temporary platform on top of a bridge crane to act as a safety platform for the workers in case of a fall. With the agreement of Blue Blade and United Safety, Fenton built the temporary platform on a bridge crane below the highest section of the roof, which served as both fall protection for Fenton and United Safety employees and a loading deck for work on the

3

upper roof. The platform only served the higher roof section, and there was no similar fall protection discussed or installed on the lower section of the roof, which is where plaintiff's accident occurred.

Fenton's CEO explained in his deposition he suggested the platform to Blue Blade and United Safety, both of which "agreed it was a great idea." He also stated Fenton and United Safety "had their own responsibility for safety" for their employees and equipment, other than the agreement regarding the platform.

In April 2021, when the project was approaching its conclusion, plaintiff and three co-workers were returning from a break to the lower roof.[3] Contrary to his supervisor's instruction, plaintiff was not wearing a harness or other safety equipment. Plaintiff explained he ignored the fall protection mandate because he believed the equipment "hinder[ed] and block[ed them] from doing [the] job properly because when [they] are wearing that, [they] can get entangled in it and then have greater problems." As plaintiff crossed the roof, it collapsed beneath him. He fell to a concrete floor approximately eighteen feet below, which resulted in severe and permanent injuries.

---

[3] The record contains conflicting statements regarding whether plaintiff was actively removing parts of the roof, walking to the work area, or going to get his harness when the accident occurred.

A-0863-24

Plaintiffs sued Shaw and Blue Blade as the owner and occupant of the building, respectively, and as general contractors for the restoration project. United Safety was named as a defendant for discovery purposes only. Plaintiffs filed an amended complaint adding Fenton as a defendant but later resolved these claims. After engaging in discovery, defendants moved for summary judgment.

Defendants contended they were entitled to summary judgment because plaintiff "was aware [the building] was fire damaged," and, although he was advised he should use fall protection gear, he chose not to do so. They disputed acting as the general contractor, pointing to testimony from United Safety's onsite supervisor indicating defendants did not directly manage the work or instruct how the work should be done.

In opposition, plaintiffs argued Blue Blade was responsible for oversight and coordination of the project and did nothing to remediate Occupational Safety and Health Administration (OSHA)[4] violations and other safety issues. They asserted Blue Blade hired various subcontractors to perform the demolition

---

[4] OSHA enforces health and safety standards in the workplace and "requires employers to comply" with those standards "through inspections and investigations," with violators facing both civil and criminal penalties. Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 359 (App. Div. 2004) (citing 29 U.S.C. §§ 654-55, 657, 666).

and construction work for the project but failed to allocate specific safety responsibilities to them. In their view, Blue Blade made a conscious decision to participate in providing the platform as fall protection for one area of the roof, but not where plaintiff and other United Safety workers were required to work. Because Blue Blade failed to satisfy any of the applicable regulatory requirements and did not ensure any other party complied with those requirements, plaintiffs claimed Blue Blade was directly responsible for the injuries resulting from the fall.

In an August 28, 2024 written opinion granting defendants' motion, the court reasoned regardless of whether defendants were viewed as the owner and occupier of the premises or as a general contractor for the restoration work, they were relieved of any duty owed to plaintiffs because they disclosed the defect and the foreseeable danger on the property to plaintiff's employer, United Safety.

The court explained "[p]laintiff was injured doing the very work he was contracted to perform," and defendants "did not retain control over the means and methods of the execution of the project." Additionally, "[defendants] had the right to assume . . . United Safety, and consequently [plaintiff], possessed

6

sufficient skill to recognize the degree of danger involved and adjust their methods of work accordingly."

Citing Wolczak v. National Electric Products Corp., 66 N.J. Super. 64, 71 (App. Div. 1961), the court noted even "if [defendant]s were the general contractors for the subject project," they would not be liable for injuries suffered by employees of the subcontractor due to "the condition [of] the premises or the manner in which the work is performed." The court also determined, pursuant to Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 406-07 (2006), defendants did not owe a duty to plaintiff because the condition of the roof was "a known danger," and United Safety was hired "to perform a specific task in respect of the hazard itself" without defendants' direct oversight and control.

Finally, the court discussed plaintiff's evidence of OSHA violations, finding them "not dispositive" as they were "only a factor in the analysis" which did not, "in itself, establish a duty of care." Relying on Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1999), the court explained "the determination of a duty on the part of a general contractor is based on general negligence principles such as 'the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" After considering these principles, the court determined "there [was] no genuine

7

issue of material fact that [defendant]s cannot be held liable for [plaintiff's] injuries, and [defendants] are entitled to judgment as a matter of law."

Plaintiffs raise three issues on appeal. First, they contend the trial court should not have granted summary judgment to defendants because there were multiple disputed issues of material fact regarding the duty they owed to plaintiff while he was working on the property. Second, they insist the court erred by holding defendants did not exercise control over the project. Third, plaintiffs assert the court wrongfully applied the inherent danger exception to liability for an independent contractor by finding plaintiff's fall from the roof was a foreseeable risk when plaintiff was hired to make certain repairs to the roof.

We review de novo a trial court's ruling on a motion for summary judgment, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The court must decide whether "there is [a] genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the

A-0863-24

non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting R. 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Coleman v. Martinez, 247 N.J. 319, 337 (2021) (quoting Robinson v. Vivirito, 217 N.J. 199,

9

A-0863-24

208 (2014)).  Negligence is never presumed, and the burden of proving it is on the plaintiff.  Buckelew v. Grossbard, 87 N.J. 512, 525 (1981).  "Whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide."  G.A.-H v. K.G.G., 238 N.J. 401, 414 (2019) (quoting Robinson, 217 N.J. at 208).

The type of duty owed to a plaintiff "is determined by the circumstance that brought [them] to the property."  Filipowicz v. Diletto, 350 N.J. Super. 552, 558 (App. Div. 2002).  Applicable here, a business invitee is an individual who is "invited on the premises for purposes of the owner that often are commercial or business related."  Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993).  Generally, a landholder owes to business invitees a duty of reasonable care "to guard against any dangerous conditions on [the] property that the owner either knows about or should have discovered."  Id. at 434.  "That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions."  Ibid.

Ordinarily, a general contractor "is not liable for injuries to employees of the [sub]contractor resulting from either the condition to the premises or the manner in which the work is performed."  Muhammad v. N.J. Transit, 176 N.J. 185, 199 (2003) (quoting Wolczak, 66 N.J. Super. at 71).  "The premise

10

underlying that approach is that a general contractor 'may assume that the independent contractor and [its] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety.'" Tarabokia v. Structure Tone, 429 N.J. Super. 103, 113 (App. Div. 2012) (quoting Accardi v. Enviro-Pak Sys. Co., 317 N.J. Super. 457, 463 (App. Div. 1999)). In this context, there is no duty of care based solely on a violation of OSHA regulations. Alloway, 157 N.J. at 236. Rather, a general contractor's duty of care is determined under "general negligence principles," id. at 230, with OSHA violations as one factor in that analysis. Tarabokia, 429 N.J. Super. at 112.

Similarly, "the law carves out an exception to the requirement that premises be made safe for an independent contractor when the contractor is invited onto the land to perform a specific task in respect of the hazard itself." Olivo, 186 N.J. at 406-07. In this context, duty "does not entail the elimination of operational hazards which are obvious and visible to the invitee upon ordinary observation and which are part of or incidental to the very work the contractor was hired to perform." Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 67 (App. Div. 1986).

A-0863-24

"'[T]he general principle is that the landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work,' provided that the landowner does not retain control over the means and methods of the execution of the project." Muhammad, 176 N.J. at 198 (alteration in original) (quoting Gibilterra v. Rosemawr Homes, 19 N.J. 166, 170 (1955)). However, this exception does not apply "where the land occupier fails to warn of a hazardous condition that the independent contractor is not there to repair, but only to traverse in order to reach another location to be addressed by the service the independent contractor has agreed to provide." Nielsen v. Wal-Mart Store No. 2171, 429 N.J. Super. 25l, 265 (App. Div. 2013).

The operative issue here is whether defendants had a duty to plaintiff to ensure his safety during the renovation project. Under the prevailing case law regarding landowners, defendants owed and breached a duty to plaintiff if there was a latent defect they knew or should have known about but failed to warn plaintiff. Neither is the case here. The record reflects defendants knew of the structural issues with the roof caused by the fire and communicated these issues to United Safety. Plaintiff's supervisor, who directed his work, knew there had been fire damage to the roof. The supervisor inspected the roof prior to the project's start and found it "wasn't in very good shape." United Safety

12

implemented safety measures, which included using the platform and mandating its employees wear harnesses. In addition to United Safety's clear knowledge of the dangerous condition, plaintiff also testified he was personally aware of fire damage to the roof. Thus, defendants discharged their duty to warn under general premises liability principles.

We briefly address whether Blue Blade was acting as a general contractor. The trial court found Blue Blade was not a general contractor because, other than contracting for the project, Blue Blade did not actively oversee the work, supply materials, or provide guidance in how the work should be completed. We discern no reason to disturb this finding.

However, even if defendants were considered general contractors for the project, they are nevertheless not liable to plaintiff because his injuries resulted from the known conditions of the property and the work itself. United Safety was aware of the "hazards attendant to removing asbestos from" the damaged roof, and "[t]he absence of any dispute that [United Safety] knew of the roof's condition makes this matter appropriate for summary judgment." Muhammad, 176 N.J. at 199. Plaintiffs attempt to distinguish the asbestos removal work plaintiff was completing from the roof repair, arguing defendants were "aware of the danger presented" by the damaged roof and "failed" to control operations

13

in a safe manner by permitting various OSHA violations to continue unabated, including allowing United Safety to work on the damaged roof. This argument is unpersuasive, primarily because both United Safety and plaintiff admit to being aware of the roof damage.

Furthermore, because the asbestos was in the same area of the roof as the structural damage and had to be removed before repairs were completed, the damage was "incidental to the very work" United Safety was hired to address. See Sanna, 209 N.J. Super. at 67. For the same reasons, whether plaintiff was actively removing asbestos from the roof, traversing it to get his harness, or walking to the work area when he fell does not alter the outcome. In any case, he was on the damaged roof, which he was hired to remediate, when the accident occurred.

Plaintiffs contend the alleged OSHA violations at the site demonstrate disputed material facts that should preclude summary judgment. The Supreme Court in Alloway held "OSHA regulations are pertinent in determining the nature and extent of any duty of care," but "the violation of OSHA regulations without more does not constitute the basis for" a negligence action. 157 N.J. at 236. Moreso, plaintiffs' reliance on Alloway is misplaced because, as we

14

previously noted, we are unpersuaded defendants were acting as general contractors for the project.

Liability may nevertheless attach if a landowner "retains control over the means and methods of the execution of the project." Muhammad, 176 N.J. at 198. Plaintiff argues this issue created a factual dispute for the jury, pointing to the testimony of a Blue Blade employee who "was responsible for coordinating the project through Fenton and . . . United Safety." We are unconvinced because the employee only gave United Safety direction to "take care of the remediation of the asbestos." The parameters of the job, including Blue Blade's requirement to remain operational in the building, merely constituted job specifications, not the means and methods by which United Safety were required to perform its work.

This conclusion is supported by the testimony of United Safety's project supervisor, who verified defendants were not directly involved in the operation of the project. He testified defendants did not "tell United Safety . . . how to do the asbestos remediation or removal or demolition" or instruct United Safety "how the work should be done." Plaintiff also confirmed he only took instructions from his supervisor, and the tools and equipment he used for the job were provided by United Safety.

15

A-0863-24

Thus, the record supports the trial court's determination defendants did not engage in significant oversight of the project. Instead, they reasonably assumed United Safety and plaintiff were "sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety." Tarabokia, 429 N.J. Super. at 113 (quoting Accardi, 317 N.J. Super. at 463).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0863-24